# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NORTHEASTERN DIVISION

LORI A. NOKES,            )
                               )
       **Plaintiff,**        )
                               )    **Civil Action No. 2:09-cv-00070**
**v.**                        )    **Judge Nixon/ Knowles**
                               )
**MICHAEL J. ASTRUE,**     )
**Commissioner of Social Security**  )
                               )
       **Defendant.**     )

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB")[1], as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 14. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 18. Plaintiff has filed a Response of Plaintiff to Defendant's Response to Plaintiff's Motion for Judgment on the Administrative Record, which the Court will construe as a Reply. Docket No. 19.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner

---

[1] While Plaintiff's brief (Docket No. 15) describes her claim as a "claim for benefits under Title IV of the Social Security Act," various documents in the record indicate that this claim is for Title II DIB benefits only (TR 21, 23, 25, 28, 67, 111). This discrepancy is not, however, material to the issues before this Court.

be AFFIRMED.

## I. INTRODUCTION

Plaintiff filed her first application for Disability Insurance Benefits ("DIB") on September 24, 2003[2], alleging that she had been disabled since February 1, 2003, due to carpal tunnel syndrome, rheumatoid arthritis with swelling of the joints, heart problems, anemia, fatigue, depression and anxiety with reported obsessive-compulsive disorder and bipolar disorder. *See, e.g.,* Docket No. 12, Attachment ("TR"), pp. 109-11. The claim was initially denied on February 23, 2004, and Plaintiff did not appeal. TR 25, 91-93.

Plaintiff filed her second application on June 30, 2005, alleging an onset date of April 1, 2000. TR 141. This application was denied initially on January 13, 2006 (TR 23, 88-90), and upon reconsideration on April 28, 2006 (TR 21, 79–80). Plaintiff did not take any further action with regard to this application.

On September 13, 2007, Plaintiff filed her third and current application for DIB, alleging a disability onset date of April 1, 2000. TR 105-07. Plaintiff's application was denied both initially[3] and upon reconsideration (TR 76-78). Plaintiff subsequently requested (TR 67) and received (TR 41-47, 507-42) a hearing. Plaintiff's hearing was conducted on August 15, 2008, by Administrative Law Judge ("ALJ") Denise Pasvantis. TR 507. During the hearing, Plaintiff

---

[2] While the Application for Disability Insurance Benefits is dated September 4, 2003, it is time-stamped September 24, 2003. TR 109. Both Plaintiff (Docket No. 15) and Defendant (Docket No. 18) use the date September 24, 2003, in their briefs. This discrepancy is not material to the issues before the Court.

[3] The document showing this initial denial cannot be found in the record, but documentation of the reconsideration denial indicates that at some point an initial request was denied. *See* TR 76.

amended her alleged onset date to February 1, 2003[4]. TR 511. Plaintiff, Plaintiff's husband

Delmar Glen Nokes, and Vocational Expert J.D. Flynn, appeared and testified. TR 535-42.

On November 4, 2008, the ALJ issued a decision unfavorable to Plaintiff, finding that

Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 9-

19. Specifically, the ALJ made the following findings of fact:

> 1. The claimant last met the insured status requirements of the
>    Social Security Act on June 30, 2004.
>
> 2. The claimant did not engage in substantial gainful activity
>    during the period from her amended alleged onset date of
>    February 1, 2003, through her date last insured of June 30,
>    2004 (20 CFR 404.1571 *et seq.*).
>
> 3. Through the date last insured, the claimant had the
>    following combination of severe impairments: rheumatoid
>    arthritis; degenerative disc disease of the lumbar spine at
>    the L4-5 level; adjustment disorder with mixed anxiety and
>    depressed mood; and obsessive compulsive disorder (20
>    CFR 404.1521 *et seq.*).
>
> 4. Through the date last insured, the claimant did not have an
>    impairment or combination of impairments that met or
>    medically equaled one of the listed impairments in 20 CFR
>    Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and
>    404.1526).
>
> 5. After careful consideration of the entire record, the
>    undersigned finds that, through the date last insured, the
>    claimant has had the residual functional capacity to lift
>    and/or carry 25 pounds occasionally and 15 pounds

---

[4] In the transcript from the administrative hearing, Plaintiff is quoted as requesting an amended onset date of February 1, 2008. TR 511. The ALJ responds, however, by asking if Plaintiff is alleging disability as of February 1, 2003. TR 511. Additionally, Plaintiff's memorandum filed with the ALJ before the hearing lists an amended alleged onset date of February 1, 2003 (TR 28), and both Defendant and Plaintiff list February 1, 2003 as the amended alleged onset date (Docket Nos. 18, 15). These discrepancies are not, however, material to the issues before this Court.

frequently, stand and/or walk 6-8 hours total in an 8-hour workday, and sit without limitation. The claimant was able to understand, remember, and carry out simple or detailed instructions and tasks.

6. Through the date last insured, the claimant was capable of performing past relevant work as a production assembler. The impartial vocational expert testified that this work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from February 1, 2003, the amended alleged onset date, through June 30, 2004, the date last insured (20 CFR 404.1520(f)).

TR 14-19.

Plaintiff timely filed a request for review of the hearing decision.[5]  TR 7-8.  On April 16, 2009, the Appeals Council issued a letter declining to review the case (TR 2-4), thereby rendering the decision of the ALJ the final decision of the Commissioner.  This civil action was thereafter timely filed, and the Court has jurisdiction.  42 U.S.C. § 405(g).  If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive.  *Id.*

## II.  REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

---

[5] The Request for Review of Hearing Decision/Order is not dated and only contains Plaintiff's name and social security claim number.  Neither party lists a date for this document. *See* Docket Nos. 15, 18.

### III.  CONCLUSIONS OF LAW

### A.  Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process.  *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991).  The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision.  *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion."  *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences.  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached.  *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).  However, if the Commissioner did not consider the record as a whole, the Commissioner's conclusion is undermined.  *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

(1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

(2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

(3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the

"listed" impairments[6] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.

(4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

(5) Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

---

[6] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

## C.  Plaintiff's Statement Of Errors

As a preliminary matter, Plaintiff contends that the ALJ erred in not reopening Plaintiff's prior applications.  Docket No. 15.  Plaintiff also contends that the ALJ erred in: 1) finding that Plaintiff did not have an impairment or combination of impairments that met or medically equaled Listing 14.09A through the date she was last insured, and finding that Plaintiff retained the residual functional capacity to lift and/or carry twenty-five pounds occasionally and fifteen pounds frequently, stand and/or walk six-eight hours total in an eight-hour workday, and sit without limitation; to understand, remember, and carry out simple or detailed instructions and tasks; and to return to her past work as a production assembler; 2) finding that Plaintiff's mental impairments did not meet or equal Listings 12.04 and 12.06 through the date she was last insured; 3) failing to consider the combined effect of Plaintiff's impairments, including pain; 4) rejecting the opinion of Plaintiff's treating physician; and 5) finding that Plaintiff's testimony was not entirely credible. *Id.*  Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

## 1. Reopening Plaintiff's Prior Applications for Social Security

While Plaintiff inserts this issue at the end of her brief, the issue of whether the ALJ should have reopened Plaintiff's prior two disability applications is a preliminary matter. As noted above, Plaintiff's first application was filed on September 24, 2003, with an alleged onset date of February 1, 2003 (TR 109-11), and denied on February 24, 2004 (TR 91-93). Her second application was filed on June 30, 2005, with an alleged onset date of April 1, 2000 (TR 108, 141), and a request for reconsideration was denied on April 28, 2006 (TR 79-80). Plaintiff argues that the issue of reopening her prior applications is important because if those applications are not reopened, then her current application must be denied under Title II of the Act, as her date of last insured occurred within the time period covered by her prior applications. Docket No. 15. Plaintiff contends that good cause exists for reopening her first application because she was not represented by an attorney for that application; she suffered then, and still suffers, from depression and anxiety, "impairing her memory and causing lack of understanding"; and there is new and material medical evidence from Dr. Bryan to support her claims. *Id.* Plaintiff additionally argues that her second application should be reopened because

the attorney she hired for that application failed to adequately pursue the appropriate appeal process, and abandoned her claim after her request for reconsideration was denied. *Id.*

Defendant agrees that Plaintiff could not receive benefits under Title II if the ALJ did not reopen Plaintiff's previous applications, but Defendant argues that while the ALJ did not formally reopen Plaintiff's previous applications, the ALJ substantively reviewed Plaintiff's entire medical record, including records from Plaintiff's medical treatment from the time period covered by the previous applications. Docket No. 18. Defendant contends that because the ALJ reviewed all the evidence and made a formal decision on the merits concerning that previous time period, the ALJ essentially reopened the previous cases. *Id.* Defendant argues that even if Plaintiff's old applications were to be formally reopened, the result would be "exactly what she got"– a substantive review of the entire record. *Id.* Defendant concludes, therefore, that Plaintiff's challenge on this issue is moot.

When the same claim for benefits has been presented in successive applications, the ALJ has the authority and choice to apply "administrative res judicata." 20 C.F.R. §§ 404.957(c)(1). In *Wilson v. Califano*, the court held that an ALJ's failure to invoke res judicata, combined with his independent consideration of evidence relevant to a claimant's disability prior to the date of denial of a prior application, resulted in a de facto reopening despite the lack of an express statement that he had reopened the prior determinations. 580 F.2d 208, 212 (6th Cir. 1987).

In *Crady v. Secretary of H.H.S.*, the claimant filed a third application alleging the same disability onset date as in the prior applications, and the ALJ considered evidence relevant to the prior applications. 835 F.2d 617, 620 (6th Cir. 1987). The ALJ in *Crady* extensively analyzed the claimant's medical condition as existed from the time that the first application was filed. *Id.*

Although the ALJ made no explicit reference to the prior two adverse decisions and did not invoke res judicata, the court held that the ALJ's consideration of evidence relevant to the prior applications was a de facto reopening of the decisions denying the two prior applications. *Id.*

In the case at bar, the ALJ's decision makes multiple references to having considered "all of the evidence," submitted by Plaintiff, including the evidence of record from the time periods of Plaintiff's previous applications. TR 12-19. Specifically, the ALJ references medical records dating back to the beginning of Plaintiff's first application, including, *inter alia*, an April 2003 MRI scan and laboratory studies; treatment given and medications prescribed in 2004; and psychological evaluations conducted in 2005. TR 18. The ALJ's consideration of medical records from the time period of Plaintiff's earlier applications constitutes a de facto reopening of Plaintiff's prior applications. Plaintiff's challenge on this issue is, therefore, moot.

## 2. Meeting or Equaling Listing 14.09A and Residual Functional Capacity

Plaintiff argues that the ALJ erred in finding that she did not have an impairment or combination of impairments that met or medically equaled Listing 14.09A[7] through the date she was last insured, because she has been diagnosed with rheumatoid arthritis and because her rheumatoid arthritis renders her incapable of performing light work, sedentary work, or any work on a sustained basis, as defined by the Act and Regulations. Docket No. 15. Plaintiff additionally contends that, accordingly, the ALJ erred in concluding that she could return to her past work as a production assembler, and in finding that she retained the residual functional capacity to lift and/or carry twenty-five pounds occasionally and fifteen pounds frequently; stand

---

[7] Listing 14.09A is headed, "Active Rheumatoid Arthritis and Other Inflammatory Arthritis."

and/or walk six to eight hours total in an eight-hour workday; sit without limitation; and

understand, remember, and carry out simple or detailed instructions and tasks.  *Id.*, *citing* TR 15,

19.

Listing 14.09A requires the following:

> *Inflammatory arthritis*.  Documented as described in 14.00B6, with
> one of the following:
>
>  A.  History of joint pain, swelling, and tenderness, and signs on
> current physical examination of joint inflammation or deformity in
> two or more major joints resulting in inability to ambulate
> effectively or inability to perform fine and gross movements
> effectively, as defined in 14.00B6b and 1.00B2b and B2c.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 14.09A.

Listing 14.00B6, defines "major joints" as:

> [T]he major peripheral joints, which are the hip, knee, shoulder,
> elbow, wrist-hand, and ankle-foot, as opposed to other peripheral
> joints (e.g., the joints of the hand or forefoot) or axial joints (i.e.,
> the joints of the spine.)  The wrist and hand are considered
> together as one major joint, as are the ankle and foot.  Since only
> the ankle joint, which consists of the juncture of the bones of the
> lower leg (tibia and fibula) with the hindfoot (tarsal bones), but not
> the forefoot, is crucial to weight bearing, the ankle and foot are
> considered separately in evaluating weight bearing.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 14.00B6a.

Listings 1.00B2b and c define effective ambulation and fine and gross movements as

follows:

> b. What We Mean by Inability to Ambulate Effectively
>
> > (1) Definition.  Inability to ambulate effectively means an
> > extreme limitation of the ability to walk; i.e., an
> > impairment(s) that interferes very seriously with the
> > individual's ability to independently initiate, sustain, or
> > complete activities. Ineffective ambulation is defined

generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

(2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

c. What we mean by inability to perform fine and gross movements effectively. Inability to perform fine and gross movements effectively means an extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living. Therefore, examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listings 1.00B2b, c.

Defendant responds that Plaintiff has failed to meet her burden of demonstrating that her

impairments met or equaled Listing 14.09A through the date she was last insured, because she has failed to prove, by medical evidence, that she had a physical examination during the requisite time period that evidenced joint inflammation or deformity in two or more major joints, which resulted in an inability to ambulate or an inability to perform fine and gross movements effectively during the requisite time period. Docket No. 18. Defendant further responds that, while Plaintiff has been diagnosed with rheumatoid arthritis, such diagnosis is only one of several requirements necessary to meet or equal the Listing, and the record contains no evidence of an extreme limitation resulting in an inability to ambulate or perform fine and gross movements effectively, as required by Listing 14.09A. *Id*

Plaintiff contends that the records of Dr. Bryan, her treating physician, support her contention that her rheumatoid arthritis renders her incapable of working. Docket No. 15. Additionally, Plaintiff testified that her rheumatoid arthritis causes her pain in her back, causes her hands to swell and get stiff, and causes her ankles to swell. TR 514. Plaintiff's husband testified that watching Plaintiff's ankles swell to the extent that they lap over her shoes scared him. TR 536.

Listing 14.09A, however, requires both a history of joint pain, swelling, and tenderness, *and* signs on current physical examination of joint inflammation or deformity in two or more major joints resulting in inability to ambulate effectively or inability to perform fine and gross movements effectively. Accordingly, Plaintiff's history of joint pain, swelling, and tenderness, diagnosis of rheumatoid arthritis, and subjective complaints of joint pain do not satisfy the Listing requirements.

In order to meet or equal Listing 14.09A, Plaintiff must also demonstrate that, at the

relevant time period, she had a physical examination revealing joint inflammation or deformity in two or more major joints resulting in an inability to ambulate effectively or an inability to perform fine and gross movements effectively. Listing 1.00B2b defines effective ambulation as the capability of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living, while Listing 1.00B2c defines the effective performance of fine and gross movements as the capability of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living.

Plaintiff testified that her major areas of arthritis pain are her back, her hands, and her ankles. TR 514. The ALJ acknowledged Plaintiff's reports that her hands are frequently stiff and swell, that her ankles become stiff and swell "if she is on her feet too long," and that any activity exacerbates her pain. TR 17. As has been discussed, however, Plaintiff's subjective complaints cannot satisfy the Listing.

Plaintiff argues that treatment records from Dr. Bryan support her contention that she meets Listing 14.09A. Docket No. 15. While Dr. Bryan's records include Plaintiff's subjective complaints of swelling and pain, they do not include any medical evidence of the required "joint inflammation or deformity in two or more major joints" or of the extreme limitations required by the Listing. *See* TR 313, 390-405, 407, 421, 423, 491-95. As the ALJ correctly observed:

> [A] review of the record in this case reveals no restrictions recommended by the treating doctor. The doctor's own reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled, and the doctor did not specifically address this weakness.

TR 16.

 Moreover, as the ALJ noted, the findings of other physicians undermine the restrictions

15

opined by Dr. Bryan and demonstrate that Plaintiff's physical impairments do not meet the Listing. *See* TR 15-18. Specifically, the ALJ addressed the opinions, *inter alia*, of Dr. Timothy Fisher, D.O., and Dr. Robert T. Doster, M.D. TR 16, 18. As the ALJ noted, upon examination, Dr. Fisher observed that Plaintiff had no synovitis and no neurological deficits, and that she had a normal gait and normal range of motion with no joint effusion or erythema in her hips, knees, ankles, feet, lumbar spine, shoulders, elbows, wrists, and hands. TR 18, 491-95. Dr. Fisher opined that Plaintiff could do jobs that require standing and ambulating six to eight hours per day, and gripping and manipulating objects weighing up to fifteen pounds frequently and up to twenty-five pounds occasionally. TR 491-95.

In a physical residual functional capacity assessment of Plaintiff completed on November 8, 2005, Dr. Doster opined that Plaintiff could lift and/or carry up to twenty-five pounds frequently, and up to fifty pounds occasionally; stand and/or walk about six hours in an eight-hour workday; sit for about six hours in an eight-hour workday; push and/or pull without limitation; and frequently climb, balance, stoop, kneel, crouch, and crawl. TR 350-55. Dr. Doster further opined that Plaintiff did not have any manipulative, visual, communicative, or environmental limitations. *Id.* Dr. Doster noted that he found Plaintiff to be only partially credible because, although she alleged that she was unable to work, she was able to do laundry and go shopping. TR 354.

After careful consideration of all the medical and testimonial evidence of record, the ALJ properly determined that Plaintiff's rheumatoid arthritis did not meet or medially equal Listing 14.09A. Plaintiff's argument fails.

Next, Plaintiff makes a somewhat related claim that the ALJ erred in finding that she

retained the residual functional capacity ("RFC") to lift and/or carry twenty-five pounds occasionally and fifteen pounds frequently; stand and/or walk six to eight hours total in an eight-hour workday; sit without limitation; and understand, remember, and carry out simple or detailed instructions and tasks; and in finding that she could return to work as a production assembler, because her rheumatoid arthritis renders her incapable of performing light work, sedentary work, or any work on a sustained basis. Docket No. 15.

Defendant responds that Plaintiff has not met her burdens of showing that she has limitations greater than those enumerated in the ALJ's RFC determination, or showing that she cannot perform her past relevant work. Docket No. 18.

"Residual Functional Capacity" is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c). With regard to the evaluation of physical abilities in determining a claimant's Residual Functional Capacity, the Regulations state:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 C.F.R. § 404.1545(b).

As discussed, the ALJ in the case at bar found that Plaintiff retained the residual functional capacity to lift and/or carry twenty-five pounds occasionally and fifteen pounds frequently; stand and/or walk six to eight hours total in an eight-hour workday; sit without

limitation; and understand, remember, and carry out simple or detailed instructions and tasks. TR 15. In making this RFC determination, the ALJ considered the medical and testimonial evidence of record, specifically referencing, *inter alia*, the testimony of Plaintiff and her husband; the medical records of Plaintiff's treating physician; and the medical source statements from the examining consultative physician, the State agency medical agent, both examining consultative psychologists, and the State agency psychological consultant. TR 15-17.

The record in the case at bar is replete with doctors' evaluations, medical assessments, and test results, all of which were properly considered by the ALJ in determining Plaintiff's "residual functional capacity for work activity on a regular and continuing basis." TR 14-19. Moreover, as the ALJ noted, Plaintiff's RFC assessment is consistent with the medical opinions rendered during the relevant time period (Dr. Regan, L.P.E. Matthews, and Dr. Fisher), later consultative and examiner opinions (Drs. Doster, Joslin, and O'Brien), and letters from Plaintiff's treating physician indicating her ability to "be active." *See* TR 16, *citing e.g.,* TR 313, 349, 350-55, 356-72, 375-80, 470-83, 484-90, 491-500. Moreover, the ALJ's RFC assessment is supported by the VE's testimony in response to the ALJ's properly detailed hypothetical questions. *See* TR 537-42. The ALJ properly evaluated the evidence in determining Plaintiff's Residual Functional Capacity, and the Regulations do not require more. Plaintiff's argument fails.

### 3. Severity of Mental Impairments and Listings 12.04 and 12.06

Plaintiff next claims that she has suffered severe mental problems for many years, such

that she meets the requirements for Listings 12.04[8] and 12.06[9].  Docket No. 15.  Defendant

responds that, while it is true that Plaintiff has been diagnosed with mental impairments,

Plaintiff's mental impairments do not meet or medically equal either of these Listings.  Docket

No. 18.  Defendant also notes that being diagnosed with mental impairments does not necessarily

render a person disabled, but rather, a psychological disorder is disabling only to the extent that

it precludes that person from engaging in substantial gainful activity.  *Id.*  Defendant argues that

Plaintiff's mental limitations do not so limit her.  *Id.*

Listing 12.04 states as follows:

> 12.04 *Affective Disorders*: Characterized by a disturbance of
> mood, accompanied by a full or partial manic or depressive
> syndrome. Mood refers to a prolonged emotion that colors the
> whole psychic life; it generally involves either depression or elation.
>
> The required level of severity for these disorders is met when the
> requirements in both A and B are satisfied, or when the
> requirements in C are satisfied.
>
> A. Medically documented persistence, either continuous or
> intermittent, of one of the following:
> > 1. Depressive syndrome characterized by at least four of
> > the following:
> > > a. Anhedonia or pervasive loss of interest in almost
> > > all activities; or
> > > b. Appetite disturbance with change in weight; or
> > > c. Sleep disturbance; or
> > > d. Psychomotor agitation or retardation; or
> > > e. Decreased energy; or
> > > f. Feelings of guilt or worthlessness; or
> > > g. Difficulty concentrating or thinking; or
> > > h. Thoughts of suicide; or
> > > i. Hallucinations, delusions or paranoid thinking; or

---

[8] Listing 12.04 is headed, "Affective Disorders."

[9] Listing 12.06 is headed, "Anxiety Related Disorders."

2. Manic syndrome characterized by at least three of the following:
      a. Hyperactivity; or
      b. Pressure of speech; or
      c. Flight of ideas; or
      d. Inflated self-esteem; or
      e. Decreased need for sleep; or
      f. Easy distractibility; or
      g. Involvement in activities that have a high
         probability of painful consequences which
         are not recognized; or
      h. Hallucinations, delusions or paranoid thinking; or

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

And

B. Resulting in at least two of the following:
    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence, or pace; or
    4. Repeated episodes of decompensation, each of extended duration;

Or

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
    1. Repeated episodes of decompensation, each of extended duration; or
    2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
    3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement,

with an indication of continued need for such an arrangement.

20 CFR Pt. 404, Subpt. P, App. 1, Listing 12.04.

Listing 12.06 provides:

12.06 *Anxiety Related Disorders*: In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.

A. Medically documented findings of at least one of the following:
    1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:
        a. Motor tension; or
        b. Autonomic hyperactivity; or
        c. Apprehensive expectation; or
        d. Vigilance and scanning; or
    2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or
    3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or
    4. Recurrent obsessions or compulsions which are a source of marked distress; or
    5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;

And

B. Resulting in at least two of the following:
    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence, or pace; or
    4. Repeated episodes of decompensation, each of extended

duration.

Or

C. Resulting in complete inability to function independently
outside the area of one's home.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.06.

Plaintiff contends that she meets Listings 12.04 and 12.06 because she has experienced depression since 1996, was admitted for mental health treatment in 1997, and was taken to the Stones River Emergency Room for a Xanax overdose in 2002. Docket 15. Plaintiff additionally argues that she meets Listings 12.04 and 12.06 because has been treated for "suicidal ideation" and diagnosed with a "major depressive disorder, recurrent, moderate, and obsessive-compulsive disorder." *Id.*

While Plaintiff meets the "A" requirements of Listings 12.04 and 12.06, the ALJ found that she had failed to establish the requisite "B" or "C" criteria of those Listings. TR 15. With regard to Plaintiff's failure to establish the requisite "B" criteria, the ALJ found that, based upon the wide variety of activities in which Plaintiff participated, including washing dishes, dusting, vacuuming, sweeping, mopping, making the bed, changing bed linens, straightening up the house, doing laundry, cooking, caring for her cat, tending to her personal self-care needs, and caring for her disabled husband, Plaintiff experienced only mild restrictions in activities of daily living. *Id.* Based upon Plaintiff's ability to drive, run errands, retail and grocery shop, talk on the telephone, attend church, and visit with others, the ALJ found that Plaintiff experienced only mild difficulties in social functioning. *Id.* Because Plaintiff could concentrate to the extent necessary to work and play on a computer, drive, work puzzle books, read, watch television, manage money, and pay bills, the ALJ found that she had mild-to-moderate difficulties with

concentration, persistence, and pace. *Id.* The ALJ noted that Plaintiff had not experienced episodes of decompensation, and specifically found that Plaintiff's mental impairments did not cause at least two "marked" limitations or one marked limitation and repeated episodes of decompensation, each of extended duration. *Id.*

Significantly, the record reflects that, although Plaintiff reported that she had experienced depression since 1996, she has worked since then. *See, e.g.,* TR 485. Moreover, as the ALJ discussed, Plaintiff's mental health treatment records indicate that, when she was compliant with keeping her scheduled appointments, she demonstrated good response to treatment with counseling and medication. TR 18. Plaintiff herself reported that her medications helped her, and that she did not experience any adverse side effects from those medications. *See, e.g.,* TR 426, 459, 519.

The ALJ also discussed the "unremarkable" findings of Plaintiff's psychological evaluations conducted by L.P.E. Matthews and Psy.D. O'Brien. TR 18. L.P.E. Matthews examined Plaintiff on December 10, 2003. TR 484-90. Ms. Matthews found Plaintiff to be oriented, cooperative, and appropriate, with no problems with her thinking or memory. TR 484-86. After relaying Plaintiff's reported symptomology and activities of daily living, Ms. Matthews opined that, from a mental standpoint, Plaintiff could appropriately relate to others in public and in private, could mentally handle simple and/or more detailed work-like procedures and instructions, could remember locations and carry out instructions, could mentally perform activities within a schedule, could maintain regular attendance, and could be punctual within customary tolerances. TR 487. Ms. Matthews also opined that Plaintiff could sustain an ordinary routine without special supervision, could maintain concentration, could work in

coordination with or proximity to others without being distracted by them or distracting them, and could make simple work-related decisions.  TR 487-88.  She further opined that Plaintiff could complete a normal work day and work week, could perform at a consistent pace without an unreasonable number and length of mental rest periods, could interact appropriately with the general public and with co-workers while maintaining socially appropriate behavior, could ask simple questions and request assistance, could accept instructions and respond appropriately to criticism from supervisors, could respond appropriately to changes in the work setting, could be aware of normal hazards and take appropriate precautions, and could set realistic goals and make plans independent of others.  *Id.*  Ms. Matthews ultimately opined that Plaintiff experienced only slight mental limitations.  TR 484-90.

William O'Brien, Psy.D., conducted his comprehensive psychiatric examination of Plaintiff on December 1, 2005.  TR 375-80.  He found Plaintiff to be alert and oriented, with clear, fluent speech, and organized and goal-directed thought processes.  *Id.*  Dr. O'Brien characterized Plaintiff's judgment and insight as fair to good, but did note that she reported experiencing "depressive-type symptoms" and had experienced "fleeting suicidal ideation, without intent or plan" a "few months" prior to the examination.  TR 377-78.  After relaying Plaintiff's reported daily activities, Dr. O'Brien opined that Plaintiff appeared to be able to communicate and interact in an acceptable manner.  TR 378-79.  Dr. O'Brien's functional assessment of Plaintiff was as follows:

> As to her psychological capacity, the claimant appears to experience mild to moderate disruption in her ability to sustain concentration and persistence, remember moderate to complex instructions, as well as maintain schedules and attendance. She is able to make plans independently of others, travel independently, be aware of normal hazards and take precautions, work with other

on the workforce, without being distracted by them (based on self-reported occupational history), accept instructions/criticism from others, socially interacting in an acceptable manner, maintain basic standards in neatness/cleanliness, as well as set realistic goals for herself.

TR 379.

After considering the medical and testimonial evidence of record, the ALJ determined that the record did not establish that Plaintiff met or medically equaled Listing 12.04 or 12.06. TR 15. As has been noted, the reviewing court does not substitute its findings for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner*, 745 F.2d at 387. In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key*, 109 F.3d at 273). The ALJ's decision that Plaintiff's impairments did not meet or medically equal a Listing was properly supported by "substantial evidence"; the ALJ's decision, therefore, must stand.

**4.  Evaluation of the Combined Effect of All Impairments**

Plaintiff contends that the ALJ failed to consider the combined effect of her impairments, including her pain. Docket No. 15. Specifically, Plaintiff argues that she suffers from rheumatoid arthritis with swelling of multiple joints, osteoporosis, mitral valve prolapse, mild degenerative lumbar disc disease, chronic fatigue, chronic pain, anxiety, depression, bipolar disease, and obsessive-compulsive disorder resulting in sores and scars on her arms and legs, such that her impairments in combination meet or medically equal a Listing. *Id.* Plaintiff also argues that her multiple impairments prevent her from working on a sustained basis, and that the ALJ misstated the evidence in reporting what Plaintiff described doing, because the ALJ failed

to state that Plaintiff engaged in her reported activities "only occasionally and at her own pace, resting in between and spacing them so as to minimize her pain." *Id.*

Defendant responds that the Supreme Court has specifically disapproved the proposition that combined impairments can substitute for deficiencies in meeting Listing requirements. Docket No. 18, *citing Sullivan v. Zebly*, 493, U.S. 521, 531 (1990). Defendant additionally contends that the record in the case at bar establishes that many of the impairments listed by Plaintiff have little or no effect on her functional abilities, considered singly or in combination. Docket No. 18. Defendant finally contends that "even a facial review of the ALJ's decision reveals that Plaintiff's impairments were considered cumulatively throughout the evaluation process." *Id., referencing* TR 14-18.

Plaintiff correctly asserts that the ALJ must evaluate the combined effect of her impairments. 42 U.S.C. § 423(d)(2)(B). Plaintiff, however, fails to show that the ALJ did not do so. As has been discussed above in the analyses of Plaintiff's previous statements of error, the ALJ in the case at bar carefully addressed the medical and testimonial evidence of record relating to all of Plaintiff's alleged physical and mental impairments. There is no evidence to support Plaintiff's claims that the ALJ failed to consider the combined effect of her impairments. To the contrary, it is clear from the ALJ's detailed, articulated rationale that the ALJ considered the record as a whole and properly evaluated the combined effect of Plaintiff's impairments. Plaintiff's argument fails.

## 5. Weight Accorded to Opinion of Plaintiff's Treating Physician

Plaintiff maintains that the ALJ erred in failing to accord controlling weight to Dr. Bryan's opinions regarding Plaintiff's RFC, ability to perform past relevant work, and disability

status because Dr. Bryan is her treating primary care physician. Docket No. 15. Defendant argues that Dr. Bryan's status as one of Plaintiff's treating physicians is irrelevant with regard to the ALJ's accepting expressed opinions of RFC, ability to perform past relevant work, and disability status, because the determination of those issues is reserved to the Commissioner. Docket No. 18, *citing* 20 C.F.R. § 404.1527(e).

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...
>
> (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...

(4) Consistency.  Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization.  We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

...

20 C.F.R. § 416.927(d) (emphasis added).  *See also* 20 C.F.R. § 404.1527(d).

If the ALJ rejects the opinion of a treating source, he is required to articulate some basis for rejecting the opinion.  *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).  The Code of Federal Regulations defines a "treating source" as:

[Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 C.F.R. § 404.1502.

Dr. Bryan, Plaintiff's general practitioner, has treated Plaintiff since November, 2002, a fact that would justify the ALJ's giving greater weight to his opinion than to other opinions, as long as his opinion was consistent with the evidence of record, and supported by objective medical findings.  *See* 20 C.F.R. § 416.927(d); 20 C.F.R. § 404.1527(d).  As discussed in depth by the ALJ, however, Dr. Bryan's opinion regarding Plaintiff's ability to work is inconsistent with, and unsupported by, his own treatment notes and the other evidence of record.  TR 16-18 (internal citations to the record ommitted).  The ALJ clearly, specifically, and properly articulated her reasons for rejecting Dr. Bryan's opinions, and the Regulations do not require more.  *Id.*

As the Regulations state, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the

28

record.  *See* 20 C.F.R. § 416.927(d)(2) and 20 C.F.R. § 404.1527(d)(2).  Instead, when there is

contradictory evidence, the treating physician's opinion is weighed against the contradictory

evidence under the criteria listed above.  *Id.*  When there are inconsistent opinions, the final

decision regarding the weight to be given to the differing opinions lies with the Commissioner.

20 C.F.R. § 416.927(e)(2).  Additionally, as Defendant correctly notes, issues of disability are

reserved to the Commissioner, and the opinions of treating physicians do not get special

consideration on such issues.  20 C.F.R. § 404.1527(e).

Because Dr. Bryan's opinions were inconsistent with, and unsupported by, his own

treatment notes and the other evidence of record, and because Dr. Bryan's opinions at issue were

regarding issues reserved to the Commissioner, the Regulations do not mandate that the ALJ

accord Dr. Bryan's evaluation controlling weight.  Accordingly, Plaintiff's argument fails.

**6.  Plaintiff's Credibility**

Plaintiff contends that the ALJ erred in finding that her testimony was not fully credible.

Docket No. 15.  Plaintiff claims that her subjective complaints are grounded in objectively

established, underlying medical conditions that are evidenced in the medical record, and

corroborated by her husband's testimony.  *Id.*

Defendant responds that Plaintiff's conclusory allegation that the ALJ "improperly"

discredited her subjective complaints lacks record support, as the ALJ did, in fact, comply with

the Regulations and relevant authorities in reaching her credibility determination of Plaintiff.

Docket No. 18.

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's allegations

of pain:

> [S]ubjective allegations of disabling symptoms, including pain,
> cannot alone support a finding of disability...[T]here must be
> evidence of an underlying medical condition *and* (1) there must be
> objective medical evidence to confirm the severity of the alleged
> pain arising from the condition *or* (2) the objectively determined
> medical condition must be of a severity which can reasonably be
> expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d

Sess. 24) (Emphasis added); *see also* 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your

pain or other symptoms will not alone establish that you are disabled...."); and *Moon v. Sullivan*,

923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating

symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the

ALJ's personal observations, and the objective medical evidence contradict each other.").

Moreover, "allegations of pain...do not constitute a disability unless the pain is of such a

debilitating degree that it prevents an individual from engaging in substantial gainful activity."

*Bradley v. Secretary*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider

the following factors and how they relate to the medical and other evidence in the record: the

claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the

precipitating and aggravating factors; the type, dosage and effect of medication; and the other

treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994)

(*construing* 20 C.F.R. § 404.1529(c)(2)). After evaluating these factors in conjunction with the

evidence in the record, and by making personal observations of the claimant at the hearing, an

ALJ may determine that a claimant's subjective complaints of pain and other disabling

symptoms are not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir.

1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).    An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility.  *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)).  Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence.  *See Walters*, 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)).  If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

In the case at bar, after considering the medical and testimonial evidence of record, the ALJ found that, while Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with Plaintiff's determined residual functional capacity.  TR 17.  In making this determination, the ALJ specifically discussed, *inter alia*, Plaintiff's daily activities as reported to treating, consultative, and examining physicians and mental health professionals, the testimony of Plaintiff and her husband, laboratory test results, MRI scan results, medication effectiveness, and the findings and opinions of L.P.E. Matthews and Drs. Bryan, Regan, Fisher, Doster, Joslin, and O'Brien.  TR 15-19 (internal citations to the record omitted).  As analyzed *supra*, the ALJ,

in her discussion of the evidence of record, noted inconsistencies between Plaintiff's reported daily activities, objective test results, and the findings of various physical and mental health professionals. *Id.* As also analyzed *supra*, the ALJ, in her discussion of the evidence of record, likewise noted the inconsistencies between Dr. Bryan's opinions regarding Plaintiff's ability to work, his treatment notes, objective test results, and the findings of various physical and mental health professionals. *Id.*

The ALJ in the case at bar found contradictions among the medical reports, Plaintiff's testimony, her reported daily activities, and other evidence. TR 15-19. Accordingly, the ALJ could properly discount Plaintiff's credibility. The ALJ has clearly stated her reasons for discounting Plaintiff's testimony, and her reasons are supported by the record. *See id.*

The ALJ observed Plaintiff during her hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of

service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge